```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

United States of America

    v.                                     Case No. 2:19-cr-179

Jamellia Kibby

## OPINION AND ORDER

Defendant was convicted of two counts of false representation of a social security number in violation of 42 U.S.C. §408(a)(7)(B). By judgment entered on January 3, 2020, defendant was sentenced to terms of incarceration of 12 months and 1 day on each count, to run concurrently, to be followed by a 2-year term of supervised release. Her self-surrender date was continued three times to enable her to complete a detoxification program and due to the risk posed by COVID-19. However, after a bond violation report was filed on September 25, 2020, defendant appeared at a bond violation hearing on October 2, 2020, and agreed that she would report to the institution no later than November 2, 2020.

On December 23, 2020, defendant, through counsel, filed a motion for reduction of sentence or compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Doc. 45. Defendant alleged that due to her severe asthma, high blood pressure, and obesity, she is at an enhanced risk of serious illness from COVID-19. The government filed a response on January 15, 2021. Doc. 47. The government did not contend that defendant has failed to exhaust her administrative remedies. However, the government opposed the motion, arguing that the Bureau of Prisons ("BOP") has taken steps to address the COVID-19 crisis, that defendant failed to establish extraordinary and compelling reasons for her release, and that her reasons are outweighed by the

statutory sentencing factors in 18 U.S.C. §3553(a). In particular, the government noted the nature and circumstances of the offenses, the history and characteristics of the defendant, and the need to afford adequate deterrence and to protect the public from further crimes by the defendant. On January 20, 2021, defendant filed a reply memorandum in support of her motion. Doc. 48. A notice of supplemental information was filed on January 26, 2021. Doc. 49.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020).[1] The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). District courts may deny relief under §3582(c)(1)(A) based upon the court's discretionary balancing of the §3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court

---

[1] Although §3582(c)(1)(A) requires that a reduction in sentence be consistent with policy statements issued by the Sentencing Commission, the Sixth Circuit has held that the policy statements contained in United States Sentencing Guidelines §1B1.13 and Application Note 1 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts can determine what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111.

"may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Grounds for Compassionate Release

A. Defendant's Health and Medical Conditions

Defendant, who is 37 years old, argues that she is at increased risk of serious illness due to COVID-19 due to obesity, severe asthma and high blood pressure. On October 29, 2020, defendant's weight was recorded as being 229 pounds. Doc. 45-3, p. 6. The record includes administrative complaints filed by defendant concerning her difficulty breathing while climbing stairs, in which she requested to be moved to the first floor. These complaints may also relate to defendant's weight. However, the medical records do not indicate that defendant's weight interferes with her daily activities.

There is evidence that defendant suffers from severe asthma. On October 29, 2020, an Albuterol inhaler was prescribed. Doc. 45-3, p. 3. Defendant has submitted a letter from Charles N.S. Soparker, M.D., who has treated defendant since 2010. Dr. Soparker stated that defendant has severe asthma, that she would qualify for 100 percent disability based on her pulmonary function test. Doc. 45, Ex. E. However, the records fail to indicate that she is currently experiencing any significant symptoms. On November 13, 2020, defendant complained of respiratory problems (which she did not mention upon her arrival at the institution). On that date,

3

she was using Albuterol MDI and denied any cough or wheezing. Doc. 45-3, p. 9. She was told to report for a sick call as needed. Doc. 45-3, p. 10.

Although the medical records show some high blood pressure readings, they do not specifically include a diagnosis of high blood pressure. The defendant did not report a history of high blood pressure to the probation officer who prepared the presentence investigation report ("PSR"). Defendant filed a supplemental memorandum indicating that on January 7, 2021, the drug amLODIPine, used to treat high blood pressure, was prescribed for her. There is no evidence that defendant's high blood pressure is not successfully controlled with this medication.

Some courts have concluded that these health conditions did not constitute extraordinary and compelling reasons for compassionate release. See United States v. Price, No. 15-20472, 2020 WL 5440164, at *5 (E.D. Mich. Sept. 10, 2020)(denying motion for compassionate release based on obesity and asthma); United States v. McKinnie, No. 1:16CR304, 2020 WL 5087058, at *2 (N.D. Ohio Aug. 27, 2020)(hypertension and obesity in combination with COVID-19 did not constitute extraordinary and compelling reasons). Defendant's health conditions alone do not constitute extraordinary and compelling reasons for an early release.

B. Risk from COVID-19

Defendant's health conditions must also be considered in light of the COVID-19 pandemic. Defendant notes the dangers posed by COVID-19 to the inmate population. However, §3582(c)(1)(A) "does not constitute a get-out-of-jail card." United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).

According to the Centers for Disease Control ("CDC"), persons with obesity (a body mass index greater than 30kg/m²) and severe obesity (a body mass index greater than 40kg/m²) are at an increased risk of severe symptoms if they contract COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited January 27, 2021). However, the medical records in this case do not report any adverse medical problems specifically linked to the defendant's weight. See United States v. Tranter, 471 F. Supp.3d 861, 865 (N.D. Ind. July 8, 2020)(noting that BMI is "a notoriously blunt tool" with clinical limitations, including its inability to differentiate between excess fat, muscle and bone mass, and that defendant had not identified any current medical issues resulting from his obesity, indicating that it has little adverse effect on his overall health).

Defendant also argues that she is at an increased risk due to severe asthma and high blood pressure. According to the CDC, persons with moderate to severe asthma and high blood pressure might be at an increased risk of serious illness due to COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 27, 2021). Dr. Soparker opined that defendant is at risk of severe illness due to COVID-19. Doc. 45, Ex. E. However, aside from defendant's complaints of shortness of breath while climbing stairs, the medical records fail to indicate that defendant's conditions are not being adequately addressed with the prescribed medication.

Defendant is incarcerated at the Lexington Federal Medical

Center ("FMC") in an adjacent minimum security camp, which houses 173 inmates. See www.bop.gov/locations/institutions/otv/ (last visited January 26, 2021). The BOP site does not give COVID-19 statistics for the camp alone. As a whole, Lexington FMC currently reports that 56 inmates and 13 staff members have tested positive, that 699 inmates and 57 staff members have recovered, and that there have been 9 inmate deaths. See https://www.bop.gov/coronavirus (last visited January 26, 2021).

However, as the government argues, the BOP has taken steps to address the COVID-19 emergency. Early in the pandemic, the BOP implemented a modified operation plan, which was updated on November 20, 2020. See https://bop.gov/coronavirus/covid19-status.jsp (last checked January 27, 2021). Under this plan, the BOP has devised precautionary measures for social visits at the institutions and inmate internal movement, inmates and staff are regularly screened, and newly arriving inmates are quarantined. The BOP has also announced that the COVID-19 vaccine has been delivered to half of the BOP's correctional facilities, and that all facilities will receive the first doses by mid-February. https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited January 27, 2021). According to the BOP bulletin COVID-19 Vaccine Guidance Federal Bureau of Prisons Clinical Guidance, p. 7, issued January 4, 2021, obese inmates are assigned to Priority Level 2 for receiving the vaccine. See https://www.bop.gov/resources/pdfs/2021 (last visited January 27, 2021).

Defendant has not submitted a release plan. If she plans on residing with her mother in Columbus, Ohio, the court notes that

the Ohio Department of Health reports that as of January 26, 2021, there have been 102,131 COVID-19 cases in Franklin County and 3,214 cases in the zip code where defendant's mother resides. See https://www.coronavirus.ohio.gov (last checked January 26, 2021).[2] Defendant may be exposed to a greater risk of contracting COVID-19 if she is released.

Defendant is not an elderly inmate, and her medical conditions are managed with medication. Defendant's medical conditions did not prevent her from committing the offenses for which she was convicted. The court concludes that defendant's health conditions, alone and in conjunction with the risk posed by COVID-19, do not constitute an extraordinary and compelling reason for her release. However, even assuming that her health conditions are grounds for compassionate release, the court must also consider the §3553(a) factors.

II. Statutory Factors

Looking to the nature of the offenses of conviction, the court finds that the offenses were serious. According to the PSR, defendant: used false social security numbers which belonged to two real children; leased a vehicle from a Chrysler dealership using a false social security number; opened a checking account at Chase Bank using a false social security number; used aliases to apply for an apartment and to lease a sport utility vehicle from a Lincoln dealership; and used an alias to open an account at Kemba

---

[2]This court can take judicial notice of the records of state agencies. See Disabled Rights Action Committee v. Las Vegas Events, Inc., 375 F.3d 861, 866 n. 1 (9th Cir. 2004)(citing Kottle v. Northwest Kidney Centers, 146 F.3d 1056, 1064 n. 7 (9th Cir. 1988)(state health department records were properly judicially noticed)).

7

Financial Credit Union, then applied for a loan at this bank. Defendant was also found in possession of literature bearing the name of her business, Global Life, Inc. which advertised the sale of credit privacy numbers ("CPNs") for $400. The literature stated that these CPNs could be used like social security numbers to open bank accounts and lines of credit and apply for loans and apartment leases. The loss to the victims was $46,872.59.

Defendant now alleges that she committed the offenses in this case due to financial difficulties. However, the PSR reported that defendant's income from her cleaning business in 2019 was $4,500 per month, and that her income in 2017-2019 from Global Life was $7,000 to $13,000 per month. In an attachment to her motion, she stated that she plans to purchase a new home for herself and her children. Doc. 45-2, p. 2. This does not support defendant's claim of financial difficulties.

As to the history and characteristics of the defendant, the PSR indicated that defendant had a difficult childhood. She was physically abused by her stepfather as a child, and was sexually abused by a cousin. She was also abused by her husband. She has five children. She has a prior conviction in 2017 for perjury, the result of making misleading statements to obtain reimbursement from Medicaid from 2011 to 2015. She was sentenced to 18 months community control. As the government argues, this sentence was not sufficient to deter defendant from engaging in additional criminal activity.

The record also reflects that after defendant's surrender to the institution was stayed, she incurred a new conviction for driving under suspension, and failed to report her contact with law

enforcement to her pretrial services officer. The government has submitted an indictment filed in the Court of Common Pleas of Union County, Ohio, on November 19, 2020, which charges that on or about August 24, 2020, defendant committing the offenses of passing a bad check payable to Coughlin Auto, forgery of a 2019 tax return used to perpetrate a fraud on Coughlin Auto, and grand theft of a motor vehicle. Basically, this indicates that a grand jury found probable cause to believe that defendant, while on bond, had engaged in the same type of conduct as the offenses charged in the instant case. These new charges also weigh against defendant's claims of remorse and acceptance of responsibility. Further, if she is released from incarceration on her federal sentence, she would presumably go into state custody on the pending indictment, which could pose even greater risks of exposure to COVID-19.

Counsel for the government further stated that prior to her surrender date, defense counsel informed him that defendant would be seeking another extension of her surrender date because she had tested positive for COVID-19. When asked to supply medical documentation, defense counsel then indicated that defendant would not be filing for an extension. After defendant surrendered to the institution, a COVID-19 test on October 29, 2020, was negative. Doc. 45, Ex. C, p. 22.

The guideline range in this case was 12 to 18 months. The court imposed a sentence of 12 months and 1 day, which would allow defendant good time credit. Her projected release date is September 5, 2021, although she may be eligible for release on home confinement before that date. Defendant has served only three months of her sentence. A reduced sentence would not be sufficient

9

to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from more crimes by the defendant. Defendant seeks to be released on a new term of supervised release with a condition of home confinement. However, she has previously demonstrated a lack of willingness to abide by conditions of release. It would be difficult for a probation officer supervising defendant to ensure that she is not engaging in the same or similar type of fraudulent activity which resulted in her conviction in this case.

The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming that defendant's health conditions, alone and viewed in light of the risk posed by COVID-19, are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motion for compassionate release (Doc. 45) is denied.

Date: January 27, 2021         s/James L. Graham
                               James L. Graham
                               United States District Judge