IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                              Case No. 2:19-cr-179

Jamellia Kibby

OPINION AND ORDER

Defendant was convicted of two counts of false representation of a social security number in violation of 42 U.S.C. §408(a)(7)(B). By judgment entered on January 3, 2020, defendant was sentenced to terms of incarceration of 12 months and 1 day on each count, to run concurrently, to be followed by a 2-year term of supervised release. Her self-surrender date was continued three times to enable her to complete a detoxification program and due to the risk posed by COVID-19. However, after a bond violation report was filed on September 25, 2020, defendant appeared at a bond violation hearing on October 2, 2020, and agreed that she would report to the institution no later than November 2, 2020. The Bureau of Prisons ("BOP") currently reports that defendant's projected release date is October 2, 2021. See www.bop.gov/inmateloc/ (last visited May 18, 2021). She has been approved for placement in a residential re-entry center (halfway house) on July 27, 2021. Doc. 54-4, p. 2.

On December 23, 2020, defendant, through counsel, filed a motion for reduction of sentence or compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018. Doc. 45. Defendant alleged that due to her severe asthma, high blood pressure, and obesity, she is at an enhanced risk of serious illness from COVID-19. The government filed a response in opposition to the motion on January 15, 2021. Doc. 47. On January

20, 2021, defendant filed a reply memorandum in support of her motion.  Doc. 48.  A notice of supplemental information was filed on January 26, 2021.  Doc. 49.  By order filed on January 27, 2021, this court denied the motion, finding that defendant's health conditions, alone and in conjunction with the risk posed by COVID-19, did not constitute an extraordinary and compelling reason for her release, and that, in any event, defendant's health and COVID-19 concerns were outweighed by the factors in 18 U.S.C. §3553(a) which militated against defendant's early release.  Doc. 50.

On March 31, 2021, the court received a letter from the defendant in which she made comments concerning matters referred to in the January decision, and essentially asked the court to reconsider her situation.  Doc. 51.  As a new ground for compassionate release, defendant expressed concerns about the care of her five children.  Defendant's request to the warden for compassionate release on that ground was denied due to the lack of supporting documentation.  Doc. 54-3.  On April 18, 2021, defense counsel filed a supplemental memorandum in support of defendant's new request for compassionate release based on family circumstances.  Doc. 54.  Defense counsel filed supplemental exhibits on April 28, 2021.  Doc. 56.  The government filed a memorandum in opposition on May 7, 2021, arguing that defendant has not provided an extraordinary and compelling reason for her release, and that the §3553(a) factors weigh against her release. Doc. 57.  Defense counsel filed a reply on May 13, 2021, and an additional exhibit on May 14, 2021.  Docs. 58 and 59.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a

2

sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020). The court must also consider the factors set forth in §3553(a) to the extent that they are applicable. §3582(c)(1)(A). District courts may deny relief under §3582(c)(1)(A) based upon the court's discretionary balancing of the §3553(a) factors even if extraordinary and compelling reasons would otherwise justify relief. United States v. Ruffin, 978 F.3d 1000, 1008 (6th Cir. 2020). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Grounds for Compassionate Release

In her second request for compassionate release, defendant expresses her concern that her five children, ages 9 through 19, may have to go into foster care if she is not released, and Antoinette Collins, the friend currently caring for the children, has new health problems. Defendant cites a policy statement issued by the Sentencing Commission. Although Section 3582(c)(1)(A) requires that a reduction in sentence be consistent with policy statements issued by the Sentencing Commission, the Sixth Circuit

3

has held that the policy statements contained in United States Sentencing Guidelines ("U.S.S.G.") §1B1.13 and Application Note 1 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts can determine what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111. However, this would not preclude the court from considering the circumstances discussed in a policy statement. In this instance, defendant relies on Application Note 1(C)(i), which provides that an extraordinary and compelling reason exists due to the "death or incapacitation of the caregiver of the defendant's minor child or minor children."

Defendant has presented a letter from her mother, Alena Kibby Johnson, who states that she works 2 jobs and is unable to care for defendant's five children. Doc. 54-1, p. 1. The record also includes a letter from defendant's 19-year-old daughter, Kamiya E. Kibby, who states that she is unable to care for her four brothers, as she is just finishing school and is trying to get licenses to start a career and to go to college. Doc. 54-6. She does not state whether she is currently working. She writes that she is currently suffering from anxiety and depression. She further states that she and her brothers are currently staying with Antoinette D. Collins, her mother's best friend, but that Ms. Collins is no longer able to care for them. Defendant also claims that some of her children have severe asthma and ADHD. Doc. 54-7.

Since defendant's incarceration, defendant's children have been cared for by defendant's friend, Antoinette D. Collins. In a letter, Ms. Collins, a single mother of 1 child, states that she

4

has had COVID-19 3 times since defendant was imprisoned, and that her health has otherwise declined. She claims that she has high blood pressure, diabetes, hypertension, and morbid obesity, as reflected in her medical records, and that these conditions continue to deteriorate. She states that she is legally blind. Ms. Collins also stated that no immediate family member has the time or ability to care for the children. She asserts that it would be best for her to release custody of the children back to her, their mother. Doc. 54-2, pp. 1-6. Her medical records show a history of high blood pressure, anemia, anxiety, sleep apnea, heart murmur, increased pressure in the brain, morbid obesity, vitamin D deficiency, recurrent major depressive episodes as of March 4, 2020, Type 2 diabetes, legal blindness and VODIV-19, as well as an optic nerve procedure in January, 2020, lumbar x-rays/spinal tap in January, 2020, and a shunt insertion and interventional radiology procedure in February, 2020 Doc. 54-1, pp. 3-4. However, these conditions are referenced in general terms, with no detail being given, and there are no medical records concerning her current health.

Defendant has also submitted letters from two of her brothers, two sisters, and her father, who state that their circumstances, such as employment, having children of their own, and limited space, do not permit them to care for defendant's children. Docs. 56, 59.

Responding to defendant's claim that she is the only person who can care for her children, the government questions whether defendant, a twice-convicted felon with a history of substance abuse and her own alleged medical problems of severe asthma,

5

obesity, and high blood pressure, would be capable of adequately caring for them herself. The government argues that the claims of defendant's mother that she is unable to care for the children because of her work schedule falls short of establishing the lack of a caregiver due to death or incapacitation. The government also notes that there is no evidence that the three fathers of defendant's three oldest children would be incapable of caring for them (defendant's husband, the father of the two youngest children, is currently incarcerated).

The court concludes that defendant's particular childcare difficulties in this case and the possibility that defendant's children may be placed in foster care until her full release in October do not constitute an extraordinary and compelling reason for her early release. The care of minor children while a parent is incarcerated is a problem faced by many convicted defendants. The fact that defendant's close family members are unwilling or unable to assume the responsibility of looking after defendant's children, while unfortunate, is not uncommon or extraordinary.

Defendant has also submitted new evidence concerning her efforts at rehabilitation. The rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release. See 28 U.S.C. §994(t)("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). However, rehabilitation may be considered along with other circumstances in deciding whether extraordinary and compelling reasons for early release exist. See United States v. Daley, 484 F.Supp.3d 1171, 1175 (M.D. Fla. 2020). Defendant is teaching a class on finances for inmates at the institution,

including topics such as budgeting, dealing with debt, saving, and investing in the stock market. Doc. 54-5. The record also includes letters from two inmates enrolled in the "Sister Circle," a group for the discussion of faith-based topics which was started by defendant. Doc. 53. An individualized needs plan dated February 3, 2021, indicates that defendant had not completed any classes other than health core topics. Doc. 54-4, p. 2. Although the court has considered this information, it does not show a significant level of rehabilitation.

The court has also considered defendant's concerns about the care of her children and her efforts at rehabilitation in conjunction with her earlier claims concerning her health problems and her risk of serious illness from of COVID-19. For the reasons stated in this court's order of January 27, 2021, defendant's health conditions do not constitute extraordinary and compelling reasons for an early release. Likewise, the threat of COVID-19 has been mitigated due to the BOP's vaccination program. The BOP reports that currently, no inmates and 1 staff member have tested positive for COVID-19 at Lexington FMC, where defendant is incarcerated, and 706 inmates and 79 staff have recovered. See https://www.bop.gov/coronavirus (last visited May 18, 2021). On that same website, the BOP reports that 321 staff members and 781 inmates have received the vaccine.

The court concludes that all of the grounds asserted by defendant in support of early release, even if considered together, do not constitute an extraordinary and compelling reason for early release in this case.

7

III. Statutory Factors

As this court found in its order of January 27, 2021, the offenses in this case were serious. According to the Presentence Investigation Report ("PSR"), defendant: used false social security numbers which belonged to two real children; leased a vehicle from a Chrysler dealership using a false social security number; opened a checking account at Chase Bank using a false social security number; used aliases to apply for an apartment and to lease a sport utility vehicle from a Lincoln dealership; and used an alias to open an account at Kemba Financial Credit Union, then applied for a loan at this bank. Defendant was also found in possession of literature bearing the name of her business, Global Life, Inc. which advertised the sale of credit privacy numbers ("CPNs") for $400. The literature stated that these CPNs could be used like social security numbers to open bank accounts and lines of credit and apply for loans and apartment leases. The loss to the victims was $46,872.59. Although these were not violent offenses, defendant engaged in conduct over a period of time which resulted in a substantial financial loss to the victims.

As to the history and characteristics of the defendant, the PSR indicated that defendant had a difficult childhood. She was physically abused by her stepfather as a child, and was sexually abused by a cousin. She was also abused by her husband. She has a prior conviction in 2017 for perjury, the result of making misleading statements to obtain reimbursement from Medicaid from 2011 to 2015. She was sentenced to 18 months community control. This sentence was not sufficient to deter defendant from engaging in additional criminal activity. Defendant has a history of

8

substance abuse, including Percocet, and was in drug treatment prior to her surrender to the institution. It is not clear from the individualized treatment plan, Doc. 54-4, whether defendant has had any substance abuse counseling while incarcerated.

In the order of January 27, 2021, this court noted that defendant was also charged by indictment returned in the Court of Common Pleas of Union County, Ohio, on November 19, 2020, with passing a bad check payable to Coughlin Auto, forgery of a 2019 tax return used to perpetrate a fraud on Coughlin Auto, and grand theft of a motor vehicle. Defendant now challenges the validity of those charges, claiming that the bank blocked the payment of the check she wrote on her daughter's account due to a fraud alert. The record includes bank records for this account from May 23, 2020, through September 24, 2020, which were submitted to the court by the holder of the account, Kamiya Kibby. These records do not show a fraud alert, although the account was credited on August 27, 2020, due to the return of a posted check in the amount of $1,000. Doc. 51-4, p. 3.

Total deposits into that account amounted to over $20,000 from May 23, 2020, through June 24, 2020, over $30,000 from June 25, 2020, through July 27, 2020, over $10,000 from July 28, 2020, to August 25, 2020, and over $25,000 from August 26, 2020, to September 24, 2020. Docs. 51-1 to 51-4. The records show that many of the account deposits were made by the defendant. Defendant's substantial deposits into the account and her admission that she wrote a check on her daughter's account indicate that defendant was using an account in her daughter's name for her own purposes, possibly to conceal her financial transactions.

9

Regardless of whether defendant is guilty of the Union County charges, the grand jury finding of probable cause to believe that the defendant had engaged in the same type of conduct as the offenses charged in the instant case while on bond waiting to self-surrender to the institution is information that this court can consider when evaluating the sincerity of defendant's claims of remorse and acceptance of responsibility. Even if the new indictment is disregarded entirely, this would not cause the court to reconsider its previous ruling on defendant's first motion for compassionate release, nor would this change the court's ruling on her renewed motion.

The record also shows that after defendant's surrender to the institution was stayed, she incurred a new conviction for driving under suspension and failed to report her contact with law enforcement to her pretrial services officer, thus demonstrating defendant's lack of respect for the conditions of her supervision. These circumstances are relevant to whether the defendant would pose a danger to the public if she is released early.

In her new filing, defendant expressed her dissatisfaction concerning her communications with counsel concerning her self-surrender date and her claim that she could not report to the institution because she had COVID-19. She now claims that her attorney did not inform her that the government agreed to an extension of her surrender date. However she has offered no proof that the government in fact agreed to an extension. She has submitted an email which indicates that her attorney informed her that the prosecutor asked for paperwork documenting a positive COVID test, a fact which counsel for the government confirmed in

his response. Doc. 51, p. 11; Doc. 57, p. 3. After defendant surrendered to the institution, a COVID-19 test on October 29, 2020, was negative. Doc. 45, Ex. c, p. 22. Defendant's groundless efforts to attack the validity of her surrender to the institution cast doubt on her credibility and do not further her case for compassionate release.

The guideline range in this case was 12 to 18 months. The court imposed a sentence at the bottom of that range of 12 months and 1 day, which would allow defendant to earn good time credit. Her projected release date is October 2, 2021. An individualized needs plan dated February 3, 2021, indicates that defendant's approved date for placement in a residential re-entry center is July 27, 2021. Doc. 54-4, p. 2. Defendant would benefit from the structure and assistance provided by halfway house placement under the supervision of the BOP. Defendant has served a little over 6-1/2 months of her sentence. A reduced sentence in this case would not be sufficient to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from more crimes by the defendant. Defendant seeks to be released on a new term of supervised release with a condition of home confinement. However, she has previously demonstrated a lack of willingness to abide by conditions of release. It would be difficult for a probation officer supervising defendant to ensure that she is not engaging in the same or similar type of fraudulent activity which resulted in her conviction in this case.

The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming that all of the reasons for early release which have been advanced by

defendant, considered together, including her health conditions, both alone and viewed in light of the risk posed by COVID-19, her efforts at rehabilitation, and her concerns regarding the care of her children, are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which weigh against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 51, 54, 56) are denied.

Date: May 20, 2021                s/James L. Graham
                                            James L. Graham
                                            United States District Judge